UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

TI GROUP AUTOMOTIVE SYSTEMS, LLC,  §
                                    §
      Plaintiff,                 §
                                    §
VS.                                 §   CIVIL ACTION NO. 7:24-CV-00141
                                    §
LUIS E ALVARADO,                    §
                                    §
      Defendant.                 §

## ORDER ON PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

Before the Court is Plaintiff TI Group Automotive Systems, LLC's and Defendant Luis Alvarado's cross motions for summary judgment on all of Plaintiff's claims. [Dkt. Nos. 70; 71]. After careful consideration, Plaintiff's motion for summary judgment is **GRANTED** in part and **DENIED** in part. Specifically, Plaintiff's motion for summary judgment on its breach of contract claim is **GRANTED**. Otherwise, Plaintiff's motion for summary judgment on its declaratory judgment, promissory estoppel, quasi-estoppel and unjust enrichment is **DENIED**. Defendant's motion for summary judgment on Plaintiff's claim for breach of contract is **DENIED**. Defendant's motion for summary judgment on Plaintiff's claims for declaratory judgment, promissory estoppel, quasi-estoppel and unjust enrichment is **GRANTED**, and these claims are **DISMISSED**. Finally, considering the impact of these summary judgment orders, Plaintiff's motion to strike [Dkt. No. 62] is **DISMISSED** as moot.

### I.      Background

Defendant Luis Alvarado is a former employee of Plaintiff TI Group Automotive Systems, LLC, a multinational company. Alvarado worked as a plant manager for Plaintiff and its subsidiary

1 / 21

for over 20 years, before his employment was terminated in 2019. Dkt. No. 70, at p.1. The facts of this lawsuit revolve around the alleged breach of a contract signed by the parties fifteen years ago.

In 2011, after years of working for Plaintiff's Mexican subsidiary and receiving compensation under Mexican law, Defendant negotiated and signed a contract, titled the Employee Selection of Laws, Exclusive Remedy, Indemnity Agreement and Waiver ("the SRIW"), under which he agreed to be transferred to the payroll of Plaintiff's U.S. arm. In relevant part, the SRIW reads as follows:

> 1. Employment Services: Employee acknowledges that he/she is employed solely by Employer in the United States as an at-will employee and receives all employment benefits in accordance with United States laws to the exclusion of Mexico's laws. Further, Employee understands and accepts that the employment services he/she is to perform for Employer will be performed in whole or in part at TI GROUP AUTOMOTIVE SYSTEMS, S. DE R.L. DE C.V.'s facilities in Reynosa, Mexico. Employee acknowledges that he/she will be an Employee of Employer at all times, even though he/she may render services or labor on behalf of TI GROUP AUTOMOTIVE SYSTEMS, S. DE R.L. DE C.V. or any other of Employer's affiliates or subsidiaries in Mexico. Employee further acknowledges that acceptance of this agreement and execution of same is required by Employer for Employee's continued at-will employment.

> 2. Exclusive Right to Recovery Solely Under US/Texas Law and Waiver of Mexican Labor Benefits: Notwithstanding the fact that Employee is required to work for Employer in Mexico, Employee understands, requests, and agrees that he/she is receiving all of his/her employment benefits and compensation in the United States and consequently waives, renounces and rejects any and all claims to any employment or any other type of benefit that could be afforded to him/her by Mexican Federal Labor Law as a result of the services he/she is performing for Employer or its affiliates or subsidiaries in Mexico. . . . Moreover, Employee affirms and obligates himself/herself to seek recovery under US/Texas law for any and all claims relating in any way to his or her employment or as it relates to Employer or its subsidiaries or affiliates in any other matter whatsoever.

> 3. Indemnity: Employee agrees that he/she will not bring any action or seek to recover against Employer or its affiliates, subsidiaries . . . or their officers, representatives or employees as a result of the services Employee will be or is performing for Employer in Mexico. Should Employee nevertheless bring any action of whatever nature against Employer and/or its affiliates, subsidiaries . . . or their officers, representatives or employees, Employee shall indemnify Employer and/or its affected affiliates or . . . their officers, directors, agents, attorneys, and successors against any award, judgment or resolution obtained by Employee against Employer or any of its Mexican affiliates or subsidiaries resulting from the services rendered by Employee.

4. Assignment of Mexican Labor and Employment Rights: Employee assigns to Employer any and all of his/her rights, claims and causes of action based upon or existing under Mexican law or Mexican Federal Labor Law which could be asserted against Employer, its affiliates or subsidiaries . . . and their officers, representatives or employees, for any benefits or monies relating in any way to the services Employee may perform for or on behalf of Employer in Mexico.

Dkt. No. 70, Exh. A, at pp.6–9 ("SRIW"). Under the SRIW, Defendant agreed to release and waive his rights to Mexican labor benefits in exchange for receiving "different and greater US based compensation and benefits." Dkt. No. 54, ¶7. These benefits included US health and dental insurance, over $110,000 in contributions to a 401(k) account, more than $450,000 in yearly bonuses, and sponsorship for permanent residency in the United States. Dkt. No. 70, Exh. A at ¶5, 9; Exh. A-4; Exhibit B at ¶4, 7. The SRIW was executed in McAllen, Texas on August 4, 2011, after which Defendant began receiving, and accepted, the contracted-for benefits. Defendant moved his family to Texas and became a US citizen and property owner while working under the contract. *Id*. Exh. F, at p.4. However, while on a temporary assignment in Morocco in 2018, Defendant began experiencing what he describes as hostility and discrimination; his employment was eventually terminated on October 16, 2019. *Id*. at Exh. D; Exh. B at p. 14. Thereafter, and pursuant to the SRIW, Plaintiff paid Defendant a lump sum severance payment of $87,675.04 less taxes and withholding, in addition to other promised benefits. Defendant accepted the severance. *Id*. at Exh. A at ¶7, Exh. B at p. 2 at ¶6; Exh. E. at p.8, Exh. F at pp. 127–28.

Despite the foregoing, Defendant filed a labor lawsuit against Plaintiff in a Mexican labor court seeking to recover additional labor compensation under Mexican law. *Id*. at Exh. D. In response, Plaintiff filed its original complaint in this Court on April 5, 2024, claiming that Defendant breached the SRIW when he filed his Mexican suit, in an attempt by Defendant to double dip in the benefits pool by receiving employment benefits in two countries for the same period of time and the same work. Dkt. No. 1. Plaintiff filed its Third Amended Complaint on February 3, 2025 (Dkt. No. 54), which contained claims of breach of contract, promissory estoppel,

3 / 21

quasi-estoppel, and unjust enrichment, and requested declaratory judgment and specific performance. After this Court decided that Texas law would be followed pursuant to the contract's choice-of-law provision (Dkt. No. 59), the parties filed the instant cross-motions for summary judgment.

<b>Parties' Cross Motions for Summary Judgment</b>

### I.        Standard of Review

Courts may grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And "[a] dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up). The party moving for summary judgment bears the initial burden of identifying the evidence "which it believes demonstrate[s] the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 318, 323 (1986); *see also* FED. R. CIV. P. 56(c)(1). While doubts and reasonable inferences regarding the facts are resolved in favor of the non-moving party, the party's conclusory allegations, which are not supported by concrete and specific facts, will not defeat summary judgment. *Anderson*, 477 U.S. at 247. On cross-motions for summary judgment, the court must "review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quotation omitted).

### II.        Evidentiary Objections

Defendant brings several objections to the summary judgment evidence offered by Plaintiff. First, Alvarado claims that certain assertion of handwritten mistakes in the contract at

issue—specifically Plaintiff's assertion of misnomer, of which more later—makes admission of a duplicate of the contract unfair under the best evidence rule. FED. R. EVID. 1002. Rule 1003 of the Federal Rules of Evidence permits a duplicate to be admitted on the same basis as an original "unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." FED. R. EVID. 1003. However, Plaintiff has explicitly admitted, via interrogatory, that the copies of the SRIW and Defendant's signature attached to Plaintiff's motion are authentic. Dkt. No. 70, Exh. E at p. 3, admissions 1–3. Furthermore, the Court does not find this to be a situation where unfairness necessitates requiring the original document. Defendant's best evidence objection is **OVERRULED**.

Second, Defendant advances extensive arguments related to the parol evidence rule. Specifically, Defendant argues that, considering Plaintiffs arguments about misnomer, the parol evidence rule bars the submission of any evidence that contradicts the terms of the SRIW. *See* Dkt. No. 73, at p.4. However, this Court, following Texas courts applying misnomer doctrine, concludes that "exceptions to the parol exclusion for contracts dealing with clarification of mistake, ambiguity, or similar issues" apply to the misnomer doctrine, "because it employs extrinsic evidence not to vary the terms of the agreement, but to determine the parties' actual intent." *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 332 n.10 (Tex. App.—Dallas 2014, pet. denied). Thus, Defendant's parol evidence objections are **OVERRULED**.

Finally, Defendant objects to the submission of Plaintiff's declarations, specifically those of Kendra Allen and Steffen Brambach. Defendant argues that Allen's declaration is a sham affidavit and hearsay.[1] The Court finds it to be neither of those things. The Court does not find Allen's declaration to be contrary to her deposition answers, and thus not a sham affidavit.

---

[1] Defendant also argues that Allen's offered evidence is "insufficient" to prove the facts asserted. Dkt. No. 73, at p.18. However, Defendant relies on cases from agency law, inapplicable here. That objection is overruled.

Furthermore, the Court finds that Allen's statement regarding information "told to her by persons with knowledge within TI Auto" to be hearsay, but information gleaned from business records falls within the business record exception. After all, "it is common in civil litigation to permit corporate representatives to testify based on their review of business records." *Rodriguez v. U.S. Bank, N.A.*, No. SA-12-CV-345-XR, 2013 WL 5948002, at *2 (W.D. Tex. Nov. 5, 2013). Defendant's objection to Kendra Allen's declaration is **SUSTAINED** in part and **OVERRULED** in part. The Court excludes the inadmissible portion and admits the rest.

Defendant argues that Plaintiff's Exhibit B-3, a 2025 W-9 issued by TI Group Automotive Systems, LLC, is irrelevant. The Court finds the inclusion of EIN on B-3 to be relevant towards a showing that Plaintiff's EIN has not changed and matches the EIN included on Defendant's older W2 forms. Defendant's objection is **OVERRULED**.

Defendant also argues that Brambach's declaration is a sham affidavit, irrelevant, conclusory, and that Brambach lacks personal knowledge. The Court does not find Brambach's deposition testimony to be contrary to his affidavit, and thus it cannot be a sham affidavit. The Court also finds Brambach's testimony regarding the company's EIN relevant for the same reasons laid out above. And finally, Brambach's statement, solely relying on out-of-court persons with knowledge of the company to testify as to the existence of TI Automotive Systems, LLC, is hearsay and must be excluded. Thus, Defendant's objection to Brambach's declaration is **SUSTAINED** in part and **OVERRULED** in part.

### III.    Breach of Contract

Plaintiff and Defendant cross-move for summary judgment on Plaintiff's breach of contract claim against Defendant. *See* Dkt. No. 70; Dkt. No. 71. Plaintiff alleges that Defendant Alvarado released and waived all of his rights to Mexican labor benefits in paragraphs 2–3 of the SRIW, and then breached those provisions by filing a labor claim in Mexico. In Texas, the elements of breach

of contract are: "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). Besides the fact that both parties refer to the SRIW as a "contract,"[2] the paragraphs at issue deal with "Waiver . . . of Benefits," "Indemnity," and "Assignment of . . . Rights." SRIW, at pp. 6–7. The Court thus views these provisions together as a release or waiver. Under Texas law, a release is a contract and is subject to contract law principles. *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 654 (S.D. Tex. 2003) (citing *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.1990) and *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex.1997)).

### a.  Presence of a Valid Contract

To form a valid contract, there must be "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration" between the parties. *Campbellton Rd., Ltd. v. City of San Antonio by & through San Antonio Water Sys.*, 688 S.W.3d 105, 115 (Tex. 2024) (quotation omitted). "In general, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). In other words, "[a] contract must include essential terms: the names of the parties, property at issue, and each party's basic obligations." *NBL 300 Group Ltd. v. Guadalupe-Blanco River Auth.*, 537 S.W.3d 529, 534 (Tex. App.—San Antonio 2017, no pet.). And yet, the court's primary concern is to ascertain the true intentions of the parties. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). For that reason, "[w]ritten contracts will be construed according to the intention of the parties, notwithstanding errors and omissions."

---

[2] *See* Plaintiff's MSJ at p.5; Def.'s Response at p.1.

*Am. 10–Minute Oil Change, Inc. v. Metro. Nat'l Bank–Farmers Branch*, 783 S.W.2d 598, 600 (Tex.App.—Dallas 1989, no writ).

### i. *Misnomer*

Plaintiff TI Auto points out that the SRIW does not reflect its full legal name of "TI Group Automotive Systems, LLC." Dkt. No. 70, at p.2. Instead, TI Auto's name was handwritten into the agreement as "TI Automotive Systems, LLC" and also as "TI Automotive." *See* SRIW at p.6. Plaintiff argues that the doctrine of misnomer allows the contract to remain enforceable. Under Texas law, "[a] misnomer occurs when a party misnames itself or another party, but the correct parties are involved." *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex.2009) (per curiam) (orig. proceeding). "Thus, the general rule is that a misnomer of a corporation has the same effect as the misnomer of an individual, and when the true name is to be collected from the instrument involved, or is shown by proper averments, the contract is not invalidated thereby." *W.B. Clarkson & Co. v. Gans S.S. Line*, 187 S.W. 1106, 1110 (Tex.Civ.App.—Galveston 1916, writ ref'd). For this reason, Texas courts often allow parties to correct misnomers in contracts and enforce them as long as neither party was misled. *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319 (Tex. App.—Dallas 2014, pet. denied); *Redi-Mix, LLC v. Martinez*, No. 05-17-01347-CV, 2018 WL 3569612 (Tex. App.—Dallas July 25, 2018, no pet.); *Hasty v. Keller HCP Partners, L.P.*, 260 S.W.3d 666, 670 (Tex.App.—Dallas 2008, no pet.); *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799 (Tex. App.—El Paso 2012, no pet.). "[T]o determine whether a misnomer in a contract renders it unenforceable, courts look at (1) whether the parties were misled by the mistake, (2) the party's identity is apparent despite the mistake, and (3) the parties intended the misnamed party to be the contracting party." *Massimo Motor Sports, LLC v. Shandong Odes Indus. Co.*, No. 3:21-CV-2180-X, 2024 WL 476967, at *6 (N.D. Tex. Feb. 6, 2024).

First, Plaintiff claims that neither party was misled by this error. Dkt. No. 70, at p.10. Although it often used its trade name "TI Automotive" in communications with Alvarado, Plaintiff points to substantial evidence that Alvarado knew and accepted that TI Group Automotive Systems, LLC was the true name of his employer when he signed the contract and throughout his employment. Before signing the SRIW, Alvarado was presented with it along with an offer letter on "TI Automotive" letterhead explaining the effect of the SRIW, which Alvarado testified that he read and understood. Dkt. No. 72, Exh. A, at pp. 33–34. Alvarado also received and signed— without complaint—numerous documents contemporaneous to signing indicating that his employer was TI Group Automotive Systems, LLC. These include employer health savings contribution forms, Dkt. No. 70, Exh. A-4, life insurance forms, *id*. at Exh. B, at p.21–23, and an immigration Employment Eligibility Verification form, *id*. at Exh. A, at p.11–12, all stating his employer was TI Group Automotive Systems, LLC. At the same time, Alvarado also never objected to his W2s, which stated Plaintiff's trade name TI Automotive and included its current Employment Identification Number, which is associated with its full name. *Id*. at pp.15–16; Exh. B, at p.13. Importantly, it was this company which provided Alvarado with employment, pay, and benefits, the receipt of which Alvarado has repeatedly acknowledged was his intent in signing the SRIW. *See* Dkt. No. 72, Exh. A, at pp.3–4; Exh. A, at p.25 (". . . as agreed in our signed contract dated on June 7, 2011.").

Alvarado's responses are somewhat conflicting. In his motion for summary judgment and his response, Alvarado states that he "was not misled about TI Automotive Systems, LLC being his employer under the terms of the SRIW. However, Luis Alvarado was misled if the court finds that Plaintiff TI Group Automotive Systems, LLC was Luis Alvarado's employer under the terms of the SRIW." Dkt. No. 73, at p.33. In support, (beyond the different names) Alvarado points to the existence of several other companies across the United States named "TI Automotive Systems,

LLC"—the erroneous name on the SRIW. *Id*. at 36. But if the implication is that Alvarado somehow believed he worked for one of these completely unrelated companies, that implication is not at all supported by any evidence presented to this court, not to mention the fact that Alvarado named Plaintiff's full legal name in his Mexican labor suit. Furthermore, "the absence of '[Group]' from [TI Auto]'s name does not create confusion, especially considering 'TI Automotive Systems, LLC' is not an affiliate of [TI Auto] and [Alvarado]'s knowledge that he was employed by [TI Auto]." *Massimo*, 2024 WL 476967, at *6.

Alvarado also points to a statement made in a declaration by Stephen Taylor, who signed the SRIW as Plaintiff's authorized representative. In that declaration, Taylor stated: "I do not know who filled in the employer name as 'TI Automotive Systems, LLC' and I do not know the exact legal name of the entity under which he and I were employed. I do know both he and I were employed by the same U.S. company that used the trade name TI Automotive." Dkt. No. 71-3, at p.2. He also points out that Elizabeth Navarro, who filled in the SRIW before giving it to Alvarado, testified that she was directed by email to write in the exact words "TI Automotive Systems" by hand. Dkt. No. 73-1, at p.5-6. Alvarado argues that these statements establish that the parties did not intend Plaintiff to be the contracting party, but rather intended TI Automotive Systems, LLC to be the party. However, besides the fact that that company *does not exist* as an affiliate of Plaintiff (making little sense as to why they would purposely include it), Dkt. No. 72-2, at p.1, all that these statements establish is *how* the mistake occurred, not that it was purposeful. Defendant has presented no other evidence that the parties intended to include the misnamed party instead of Alvarado's acknowledged employer.

At bottom, it seems that Alvarado argues that all he and Taylor were misled about was the proper legal *name* of Plaintiff; Alvarado does not seem to present any evidence that he was actually misled about the *identity* of Plaintiff in the SRIW, or that Plaintiff did not perform as his employer

under the terms of the contract. *See AmeriPath*, 447 S.W.3d at 332. In fact, Alvarado repeatedly acknowledged the enforceability of the contract against his employer. There is no genuine dispute: Alvarado was not misled about Plaintiff's identity, the identity of his employer was otherwise apparent to Alvarado and Plaintiff, and both parties intended Plaintiff to be the properly named contracting party. Thus, the Court concludes that the misnomer does not make the employment agreement unenforceable.[3]

### ii.  *Consideration*

Plaintiff claims that there was a mutually assented-to, bargained-for exchange: Defendant "promised not to seek Mexico labor benefits or sue TI Auto," and in return, Plaintiff made sure Defendant was given U.S. benefits, "transferred to U.S. payroll, sponsored for U.S. residency, paid under U.S. law, [and] hired as a U.S.-based employee." Dkt. No. 70, at p.5. Additionally, Plaintiff relies on the unpublished Fifth Circuit case of *3D/Int'l, Inc. v. Romano*, which finds that, in employment at-will situations under Texas law, "either party has the right to end the employment relationship at any time, for any reason . . . . [s]o, either party can also impose a modification to the employment terms at any time, the consideration for which being continued employment." 811 F. App'x 244, 251–52 (5th Cir. 2020).[4] Defendant argues that this latter point is incorrect, pointing out that under Texas law, "[c]onsideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment." *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 301 (Tex. 2009) (quoting *Light v. Centel Cellular Co. of*

---

[3] Alvarado also argues that the Court cannot reform the contract because there was no mutual mistake of fact, as required for reformation. Dkt. No. 71, at p. 12–13. However, misnomer does not require reformation, but rather reading the contract in line with original intent. In fact, it rests on the opposite of mutual mistake: mutual *agreement* on the identity of the party. *AmeriPath*, 447 S.W.3d at 332.

[4] Defendant argues forcefully that the SRIW did not involve a mere "modification" to his employment, but instead the termination of one employment and the offer and acceptance of another. Dkt. No. 73, at p. 23–24. Although this argument seems to carry weight in light of the wording of the contract, considering the Court's finding of a unilateral contract, it struggles to see what impact this has on the question of consideration or the enforceability of the contract otherwise.

*Texas*, 883 S.W.2d 642, 644 (Tex.1994)). This is because "[s]uch a promise would be illusory because it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance." *Id*. at 645.

Defendant is correct that "[w]hen illusory promises are all that support a purported *bilateral* contract, there is no contract." *Light*, 883 S.W.2d at 645 (emphasis added). However, "[i]f only one promise is illusory, a *unilateral* contract can still be formed; the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance." *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 649 (Tex. 2006) (quotation omitted). In other words, a promise can become non-illusory and transform a bilateral contract into a unilateral contract. *See Vanegas*, 302 S.W.3d at 303 ("[W]hether the promise was illusory at the time it was made is irrelevant; what matters is whether the promise became enforceable by the time of the breach."). Here, Alvarado promised not to seek Mexican labor benefits or sue Plaintiff, if Plaintiff employed Alvarado, placed him on its U.S. payroll, gave him access to U.S. employee benefits, and sponsored his U.S. residency. "If the employee merely sought a promise to perform from the employer, such a promise would be illusory because the employer could fire the employee and escape the obligation to perform." *Sheshunoff*, 209 S.W.3d at 649. However, Plaintiff *did* provide Defendant with his promised employment and benefits. By providing Alvarado with what he was promised, Plaintiff accepted Alvarado's offer through performance, creating a unilateral contract "in which the employee is now bound by the employee's promise." *Id*. at 649–50; *Vanegas*, 302 S.W.3d at 303. For these reasons, the Court therefore finds that there is valid consideration for the SRIW.

### iii.  *Mutual Assent*

In his motion for summary judgment, Defendant claims that a valid contract could not have been formed because of a lack of mutual assent. Defendant's claim centers on the statement made

in a declaration by SRIW-signor Stephen Taylor, discussed above. In that declaration, Taylor stated: "I do not know who filled in the employer name as 'TI Automotive Systems, LLC' and I do not know the exact legal name of the entity under which he and I were employed. I do know both he and I were employed by the same U.S. company that used the trade name TI Automotive." Dkt. No. 71-3, at p.2.

However, this argument is largely refuted by the finding of enforceable misnomer above. To form a binding contract, the parties must have mutual assent, or a "meeting of the minds," on the essential terms of the contract. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). "Meeting of the minds" describes "the mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract." *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 449 (Tex. App.—Houston [14th Dist.] 2012, pet. filed). Alvarado agrees that he assented to the terms of the SRIW, and the evidence supports this.

Alvarado, however, argues that there still cannot have been mutual assent between Taylor and Alvarado because "neither of them knew Plaintiff was a contracting party." Dkt. No. 71, at p.8. Interestingly, Defendant relies on Taylor's statement elsewhere to argue that somehow there was also "*no mistake* of fact" between the two parties, seemingly establishing some mutuality on the contracting party. *Id*. at p. 12–13.  As established above, although they could have both been mistaken as to the exact legal name of Plaintiff, Defendant has presented no evidence that either party was mistaken as to the *identity* of their employer, or that they did not intend to bind Plaintiff to the contract, as shown by the rest of Taylor's statement and the summary judgment evidence presented above.

Although Alvarado has testified that he thought Plaintiff's name was different, he has not presented any evidence that he believed the SRIW was enforceable against anyone but his employer, or that he believed that he was going to work for a company other than Plaintiff. Instead,

13 / 21

the evidence shows that both parties had a mutual understanding regarding the subject matter and essential terms, including that TI Automotive and TI Automotive Systems, LLC, referred to Alvarado's employer, TI Group Automotive Systems, LLC. And as the Court has found misnomer applies, the Court determines both parties mutually intended to bind Plaintiff to the contract. Defendant has not presented more than a scintilla of evidence otherwise. There is no genuine dispute of fact: the parties mutually assented to the SRIW.

### iv.  *Authority to Sign*

Finally, Alvarado argues that Stephen Taylor had no authority to execute the SRIW on Plaintiff's behalf, rendering it unenforceable. In support of this argument, Alvarado first argues that there can be no actual or apparent authority because—relying on Taylor's above statement—Taylor "admits he did not know who he was representing at the time the SRIW was signed," Dkt. No. 73, at p.29, and therefore Taylor could not "reasonably believe[], in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006). Alvarado also points to a body of caselaw that states that the use of a tradename is "generally an insufficient disclosure of the principal's identity and the fact of agency . . . ." *Burch v. Hancock*, 56 S.W.3d 257, 261 (Tex. App.—Tyler 2001, no pet.).

However, these cases make clear that this rule only operates in cases where it is sought "to protect *the agent* against personal liability" and shift it to the principal. *Id*. at 262. Here, Plaintiff agrees that Taylor was Plaintiff's authorized representative. *See* Dkt. No. 72, at p.3; Dkt. No. 70, Exh. B, at p.1. It would make little sense if a party to a contract outside of the agency relationship could invoke agency law to invalidate the contract based on some miscommunication between the otherwise-in-agreement agent and principal. That is partially why "[o]nly the acts of the principal may be considered." *Humble Nat. Bank v. DCV, Inc.*, 933 S.W.2d 224, 237 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Indeed, "[i]f the party decides to deal with the agent without

determining the fact and scope of the agent's authority, they do so at their own risk." *Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 681 (N.D. Tex. 1998).

Here, both principal and agent are in agreement as to the agent's authority. Plaintiff is seeking to enforce the agreement, not disavow it for lack of actual or implied authority. Thus, Defendant's argument on this point fails. The Court finds as a matter of law that a valid, enforceable contract exists.

### b. Performance

Plaintiff argues it performed its obligations under the SRIW. Specifically, TI Auto employed and paid Alvarado and provided him with substantial U.S.-based benefits including U.S. healthcare, medical and dental insurance. Dkt. No. 70, Exh. A at ¶5, 9; Exh. A-4; Exh. B, at ¶4. Moreover, TI Auto contributed more than $110,000.00 to Alvarado's U.S.-based 401(k) account and paid him more than $450,000.00 in U.S.-based employee bonuses. *Id*. at Exh. A, at ¶5; Exh. B, at ¶7. TI Auto also sponsored Alvarado for permanent residency in the U.S. *Id*. at Exh. A, at ¶5; Exh. B at ¶4. Finally, Plaintiff paid Alvarado a lump sum severance payment of $87,675.04 minus applicable taxes, as well as six months of insurance coverage under COBRA and outplacement counseling. *Id*. Exh. A at ¶7, Exh. B at p.2, at ¶6; Exh. E. at p.8, interrogatory answer 12; Ex. F at p.8. Alvarado disputes none of this.[5]

However, Plaintiff and Defendant do agree that after Defendant was terminated, Defendant was offered voluntary health insurance benefits through MetLife by TI Auto's Mexican affiliate, as is required by Mexican law. *Compare* Dkt. No. 71, at pp.20–23; Dkt. No. 72, at p.11. In other words, Alvarado was allowed to voluntarily pay for a health insurance offered by the Mexican affiliate that he "rendered services or labor on behalf of" in compliance with the SRIW. *See* SRIW

---

[5] Although Defendant initially disputed the receipt of this severance payment, Plaintiff points out that Defendant misquoted the Plaintiff's employee's testimony offered in support, to no surreply. Dkt. No. 74, at p.7.

15 / 21

at p.6. Alvarado argues that by providing voluntary health insurance under Mexican law, Plaintiff materially breached the SRIW before Defendant did, thus defeating Plaintiff's breach of contract claim. Dkt. No. 71, at p.20

The SRIW, in relevant part, states that "Employee acknowledges that he/she is employed solely by Employer in the United States as an at-will employee and receives all employment benefits in accordance with United States laws to the exclusion of Mexico's laws." SRIW, at p.3. Furthermore, it states: "Notwithstanding the fact that Employee is required to work for Employer in Mexico, Employee understands, requests, and agrees that he/she is receiving all of his/her employment benefits and compensation in the United States and consequently waives, renounces and rejects any and all claims to any employment or any other type of benefit that could be afforded to him/her by Mexican Federal Labor Law as a result of the services he/she is performing for Employer or its affiliates or subsidiaries in Mexico. . . . Employee acknowledges that he/she is not entitled to, and hereby rejects, any claim to any other employment benefits or compensation other than those provided by Employer and pursuant to federal or Texas law." *Id*. at 4.

In Texas, "[t]he judge determines what conduct is required of the parties and, insofar as a dispute exists concerning the failure of a party to perform the contract, the judge submits the disputed fact questions to the jury." *Chappell Hill Bank v. Lane Bank Equip. Co.*, 38 S.W.3d 237, 245 (Tex. App.—Texarkana 2001, pet. denied) (quotation omitted). However, "[w]here the evidence is undisputed regarding a person's conduct under a contract, the court alone must determine whether such conduct shows performance or a breach of a contractual obligation." *Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*, 86 F.4th 667, 678 (5th Cir. 2023) (quoting *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 868 (Tex. App.—Austin 2001, pet. denied)). Here, there is no dispute that Alvarado was offered and paid for voluntary benefits from a Mexican subsidiary after he was terminated as required by Mexican law. The Court is thus

presented with the purely legal question of whether this constituted a material breach of the terms of the SRIW.

The Court finds that it did not. The contract explicitly accounts for the possibility of Mexican-*required* rights and benefits by obligating that Alvarado, "[n]otwithstanding the fact that Employee is required to work for Employer in Mexico, . . . waive[], renounce[] and reject[] any and all claims to any employment or any other type of benefit that could be afforded to him/her by Mexican Federal Labor Law." SRIW at 6. The SRIW thus accounts for voluntary benefits; that Alvarado voluntarily sought and paid for those benefits from Plaintiff's Mexican subsidiary does not mean Plaintiff violated the SRIW nor does it amount to a material breach by Plaintiff. The Court finds as a matter of law that Plaintiff performed under the SRIW.

### c.  Defendant's Breach and Plaintiff's Injury

Whether the defendant breached the contract is a question of law for the court, not a fact question for the jury. *E.P. Towne Ctr. Partners v. Chopsticks, Inc.*, 242 S.W.3d 117, 123 (Tex.App.—El Paso 2007, no pet.). Plaintiff asserts that Alvarado breached the SRIW by filing a labor lawsuit in Mexico against Plaintiff. Dkt. No. 70. Defendant does not advance any arguments in response to this element. Indeed, both this Court and the Fifth Circuit have found lawsuits for labor benefits in Mexican courts, after signing releases like the one at issue, to be "obvious" breaches of contract. *Thermo Fisher Sci. Inc. v. Ducharme*, No. CV M-08-9, 2008 WL 11399557, at \*8 (S.D. Tex. Sept. 30, 2008); *3D/Int'l, Inc. v. Romano*, 811 Fed. Appx. 244, 247 (5th Cir. 2020) ("Romano's Mexican lawsuit <u>undisputedly</u> violates the terms of the AREA, wherein he waived his right to pursue certain Mexican labor benefits. . ..") (emphasis added). The SRIW explicitly states that "Employee agrees that he/she will not bring any action or seek to recover against Employer or its affiliates, subsidiaries . . . as a result of the services Employee will be or is performing for Employer in Mexico." SRIW at 6. Alvarado brought suit in Mexico filed a labor lawsuit in Mexico

seeking compensation according to Article 123 of the Mexican Constitution and the Mexican Federal Labor Law. *See* Dkt. No. 70, Exh. D.

At bottom, Alvarado promised not to seek Mexican labor benefits or file a labor lawsuit in Mexico. He then did just that, seeking more than $2.68 million U.S. dollars from Plaintiff under Mexican labor law. Thus, the Court finds Plaintiff committed an "obvious" breach of contract. *Thermo Fisher*, 2008 WL 11399557, at *8. Furthermore, Plaintiff was at least nominally injured: "The law is, that if the contract is proven to be broken, the law would give some damage, sufficient to authorize a verdict for the plaintiff." *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 664 (Tex. 2009) (quotation omitted).

For the reasons above, the Court finds that Plaintiff has proven all the elements of breach of contract as a matter of law, and thus its motion for summary judgment on that claim should be **GRANTED**. Likewise, Defendant has not met its summary judgment burden; its motion is **DENIED**.

### d. Remedy

In most cases, a plaintiff must elect to seek either monetary damages or specific performance. *White Knight Dev., LLC v. Simmons*, 718 S.W.3d 203, 209 (Tex. 2025). Here, Plaintiff has elected to seek specific performance of the SRIW. Specific performance is an equitable remedy that is used as a substitute for monetary damages when such a remedy would be inadequate. *Id*.

At a motions hearing held on February 2, 2026, the Court informed the parties that it required more briefing on the subject of remedies, particularly on the operation and propriety of specific performance in this case, and the enforcement thereof.[6] The Court also requested a

---

[6] This Court notes that it has written on the propriety of an injunction in a previous, similar case. *Thermo Fisher*, 2008 WL 11399557, at *8. Furthermore, although the Court makes no judgment on the issue here, Texas courts have held that they will "not order specific performance where such remedy will not grant complete relief for a present injury but would serve only to avert possible future damages or assist in the

18 / 21

proposed order on remedies. Accordingly, the parties are **ORDERED** to provide additional briefing to the Court on that issue—including on the subject of attorney's fees—in accordance with the discussion held at the aforementioned motions hearing.

IV.    **Plaintiff's Remaining Causes of Action**

a.    **Declaratory Judgment**

Plaintiff also moves for summary judgment on its declaratory judgment claim, "requesting that the Court order Alvarado, who was sponsored by TI Auto to become a naturalized and then full U.S. citizen, to comply with the SRIW." Dkt. No. 70, at p.8. Defendant also moves for summary judgment, advancing several arguments. First, Alvarado argues that the Court should dismiss Plaintiff's declaratory judgment claim because it "seeks to determine purely factual issues," against state law. Dkt. No. 71, at p.14. However, state law does not apply to this claim: "[i]n a diversity case such as this one, any declaratory judgment action must be brought under the Federal Declaratory Judgment Act." *Piazzo v. Allstate Indem. Co.*, 601 F. Supp. 3d 189, 195 (S.D. Tex. 2022).

Regardless, Defendant's second argument is availing. Specifically, Defendant argues that "determining whether Defendant breached the SRIW contract is redundant of Plaintiff's breach of contract claim and third-party beneficiary breach of contract claim and therefore should be dismissed." Defendant is correct. This Court should dismiss declaratory judgment actions "where '[t]he core issues of th[e] controversy concern[ed] whether the parties entered into enforceable contracts and, if so, whether defendants breached the contracts.'" *Xtria LLC v. Tracking Sys., Inc.*,

---

enforcement of a possible future damage award." *Woody v. J. Black's, LP*, 2016 WL 3677241, at *3 (Tex. App.—Austin July 7, 2016, no pet.). Furthermore, "a court's order of specific performance of a contract must compel performance by both parties, rather than ordering only one party to specifically perform." *Id*; *see also Am. Hous. Res., Inc. v. Slaughter*, 597 S.W.2d 13, 16 (Tex. App.—Dallas 1980, writ ref'd n.r.e.) (reversing a trial court's award of specific performance that required defendants to place funds in an escrow account to indemnify plaintiffs in event their tax deductions for designated year were below a stated amount in their contracts.).

No. 3:07-CV-0160-D, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (quoting *Kougl v. Xspedius Mgmt. Co.*, 2005 WL 1421446 at *4 (N.D.Tex. June 1, 2005)). That is the core of Plaintiff's declaratory action claim here.

Plaintiff's motion for summary judgment on its claim for declaratory judgment is **DENIED**. Defendant's motion for summary judgment on Plaintiff's claim for declaratory judgment is **GRANTED**. Plaintiff's declaratory judgment claim is **DISMISSED**.

### b.  Promissory Estoppel, Quasi-Estoppel and Unjust Enrichment

Both parties cross move for summary judgment on Plaintiff's claims for promissory estoppel, quasi-estoppel and unjust enrichment. First, "a claim for promissory estoppel and a contract claim are mutually exclusive claims; a litigant cannot recover on one if it recovers on the other." *Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 637 (Tex. App.—Houston [14th Dist.] 2004, pet. abated). Generally, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory like unjust enrichment. *Ledig v. Duke Energy Corp.*, 193 S.W.3d 167, 176 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Finally, in Texas, quasi estoppel is not a freestanding cause of action but an affirmative defense. *Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015).

Considering, too, that Plaintiff brings these claims in the alternative to its breach of contract claim, the Court finds that Plaintiff's motion for summary judgment on claims of promissory estoppel, quasi-estoppel and unjust enrichment is **DENIED**. Defendant's motion for summary judgment on these claims is **GRANTED**, and such claims are **DISMISSED**.

### Conclusion

For the reasons stated above, Plaintiff's motion for summary judgment is **GRANTED** in part and **DENIED** in part. Specifically, Plaintiff's motion for summary judgment on its breach of

contract claim is **GRANTED**. Otherwise, Plaintiff's motion for summary judgment on its declaratory judgment, promissory estoppel, quasi-estoppel and unjust enrichment is **DENIED**.

Defendant's motion for summary judgment on Plaintiff's claim for breach of contract is **DENIED**. Defendant's motion for summary judgment on Plaintiff's claims for declaratory judgment, promissory estoppel, quasi-estoppel and unjust enrichment is **GRANTED,** and these claims are **DISMISSED**.

Considering the impact of these summary judgment motions, Plaintiff's motion to strike is **DISMISSED** as moot.

SO ORDERED February 23, 2026, at McAllen, Texas.

Randy Crane
Chief United States District Judge